No. 04-869

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 28

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

JOEL ALFRED ST. GERMAIN,

       Defendant and Appellant.


APPEAL FROM:    The District Court of the Twenty-First Judicial District,
                     In and For the County of Ravalli, Cause DC 03-159,
                     Honorable Jeffrey H. Langton, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

       David E. Stenerson, Stenerson Law Office, P.C., Hamilton, Montana

       For Respondent:

       Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
       Assistant Attorney General, Helena, Montana

       George H. Corn, County Attorney; William E. Fulbright,
       Deputy County Attorney, Hamilton, Montana


                     Submitted on Briefs:  December 29, 2005

                     Decided:  February 6, 2007

Filed:


                     _____
                                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Joel Alfred St. Germain (St. Germain) appeals from his conviction in the Twenty-First Judicial District Court, Ravalli County, of four counts of incest, all felonies, in violation of § 45-5-507, MCA, and four counts of sexual intercourse without consent, all felonies, in violation of § 45-5-503, MCA.  We affirm.

¶2    We restate the issues on appeal as follows:

¶3    1.  Was St. Germain's right to be present at all critical stages of his trial violated?

¶4    2.  Did the District Court abuse its discretion in refusing to allow St. Germain's defense investigator to testify as an expert regarding the victim's credibility?

¶5    3. Did St. Germain's trial counsel render ineffective assistance of counsel, depriving him of a fair trial?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6    H.M. began living with St. Germain and her mother at age seven, shortly after he and her mother married.  While living in St. Germain's household, H.M. was afraid of him and was a constant victim of his discipline.  St. Germain disciplined H.M. with grim physical punishment, involving weight training and strenuous exercise.  St. Germain further exercised complete emotional control over H.M. through his disciplinary techniques.

¶7    H.M. lived with her mother and St. Germain in both Missoula, Montana, and Butte, Montana, until she was eleven-years-old.  While living in Butte, St. Germain had an exercise area in the basement in which H.M. would exercise with him.  One day, while in the exercise area, St. Germain instructed H.M. to lie on the floor with her knees up.  St.

2

Germain pulled down H.M.'s pants and proceeded to have anal intercourse with H.M. H.M. further recalled having anal intercourse with St. Germain on separate occasions in the back of his van while St. Germain was working as an independent floor installer.

¶8 While later living in Stevensville, Montana, St. Germain performed both digital and anal intercourse upon H.M. Later still while in Stevensville, St. Germain began having vaginal intercourse with H.M., but would still use anal intercourse as a form of punishment.

¶9 At age fourteen, H.M. and her family, including St. Germain, moved to Lost Trail Hot Springs, Montana. H.M. was forced to take showers in the women's locker room of the hot springs because the trailer the family was living in did not have hot water. On more than one occasion while taking showers at the hot springs, St. Germain would enter the shower and have sexual intercourse with H.M.

¶10 At age sixteen, the family moved to Darby, Montana. While H.M.'s mother would be out of the house, St. Germain would often force H.M. to have sexual intercourse with him. At this point, St. Germain also forced H.M. to perform oral intercourse upon him. St. Germain further performed oral intercourse upon H.M.

¶11 In the end, St. Germain had sexually abused H.M., his stepdaughter, repeatedly between the ages of eleven and nineteen. Additional facts will be discussed where relevant.

¶12 The State filed an information charging St. Germain with "Charge One": four counts of incest, all felonies, in violation of § 45-5-507, MCA; and "Charge Two": four counts of sexual intercourse without consent, all felonies, in violation of § 45-5-503,

3

MCA. St. Germain was represented by counsel, Kelli Sather, at all stages of the trial proceedings relevant to this appeal. St. Germain entered pleas of not guilty. A jury trial was held, and the jury found St. Germain guilty on all counts.

¶13 The District Court sentenced St. Germain to a term of one-hundred years, with twenty-five years suspended to be served at the Montana State Prison.

## STANDARD OF REVIEW

¶14 Whether a criminal defendant's right to be present at the critical stages of his or her trial has been violated is a question of constitutional law, and our review of questions of constitutional law is plenary. *State v. McCarthy*, 2004 MT 312, ¶ 29, 324 Mont. 1, ¶ 29, 101 P.3d 288, ¶ 29. A district court is vested with broad discretion in ruling on the admissibility of expert testimony, and without a showing of abuse of discretion, the district court's ruling will not be disturbed on appeal. *State v. Riggs*, 2005 MT 124, ¶ 18, 327 Mont. 196, ¶ 18, 113 P.3d 281, ¶ 18; *State v. Crawford*, 2003 MT 118, ¶ 30, 315 Mont. 480, ¶ 30, 68 P.3d 848, ¶ 30; *State v. Hocevar*, 2000 MT 157, ¶ 54, 300 Mont. 167, ¶ 54, 7 P.3d 329, ¶ 54. Claims of ineffective assistance of counsel present mixed questions of law and fact that we review de novo. *State v. Novak*, 2005 MT 294, ¶ 15, 329 Mont. 309, ¶ 15, 124 P.3d 182, ¶ 15.

## DISCUSSION

### Issue 1.

¶15 *Was St. Germain's right to be present at all critical stages of his trial violated?*

¶16 St. Germain alleges his constitutional right to be present at all critical stages of his trial was violated when the District Court did not advise him of his right to question

4

jurors regarding alleged conversations taking place between jurors, witnesses, and spectators to the trial.

¶17 The background to St. Germain's claims is as follows: On the second day of the trial, the parties met in chambers where defense counsel brought to the District Court's attention that Juror No. 7 had been seen speaking with H.M.'s biological father in the hallway next to the courtroom. St. Germain was present during the in-chambers discussion. H.M.'s father was not a witness in the trial, and the State's counsel expressed to the District Court that he would inform H.M.'s father to not have any sort of conversation with any of the jurors. The District Court was satisfied with this suggestion, defense counsel did not object, and the trial proceeded.

¶18 On the third day of trial in another in-chambers discussion, defense counsel again expressed concern that a lot of talk was going on in the hallways concerning the case and also, that the bailiff was speaking to a juror. The District Court then asked both defense counsel and St. Germain if they wanted to question the bailiff on the record concerning what had taken place. Both St. Germain and his defense counsel responded negatively. Defense counsel did, however, request the District Court to caution the jury regarding the conversations allegedly taking place. The District Court did so, instructing as follows:

> All right. Before we begin, I would just like to mention again there's been some concern about witnesses and parties and attorneys and jurors mingling in our small area up here. I just want to emphasize again the need to be careful about talking to anybody who could be involved in the case or saying anything, even if it's innocent. If somebody sees something or hears something, they might get suspicious about it even if it is innocent. I would ask everybody to be poker-faced and quiet around participants. I would appreciate it.

5

Despite the cautionary instruction, defense counsel moved for a mistrial based on the hallway conversations and because witnesses allegedly had been speaking to each other regarding the case. The District Court denied the motion and proceeded with the trial. The District Court did not advise St. Germain he had any right to call Juror No. 7 into chambers to discuss any alleged conversations that took place and defense counsel did not make such an argument at trial.

¶19 The federal constitutional right to be present at all criminal proceedings is one of the most basic rights contained in the Confrontation Clause of the Sixth Amendment of the United States Constitution. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970). In Montana, the right of a criminal defendant to be present at his trial is expressly guaranteed by the Montana Constitution: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel . . ." Mont. Const. art. II, § 24. This Court recognized as early as 1922, when interpreting an identical provision of the 1889 Montana Constitution, that "the defendant must be present throughout the *entire* trial." *State v. Reed*, 65 Mont. 51, 56, 210 P. 756, 757 (1922) (emphasis added). This Court stated in *Reed*:

> No principle of law, relating to criminal procedure, is better settled than that, in felony cases, nothing should be done in the absence of the prisoner. It is his unquestioned right "to be confronted with his accusers and witnesses." He has the legal right to be present when the jury are hearing his case, and at all times during the proceeding of the trial, when anything is done which in any manner affects his right . . ."

*Reed*, 65 Mont. at 58, 210 P. at 758 (citation omitted).

6

¶20    St. Germain urges us to apply our holding in *State v. Bird*, 2002 MT 2, 308 Mont. 75, 43 P.3d 266, to the facts herein.  *Bird* involved a criminal trial where Bird, the defendant, was charged with partner or family member assault.  At the trial, before *voir dire* began, the district court allowed the State to conduct individual *voir dire* examinations in the court's chambers of any prospective juror who had previous experience with domestic violence.  During these examinations, the prosecutor and defense counsel were in attendance, but the defendant was not.  *Bird*, ¶ 12.  Neither the district court, the prosecutor, or defense counsel informed the defendant that "he had a constitutional right to be present during the individual questioning of the jurors." Further, the district court did not allow the defendant the opportunity to choose to participate in the individual *voir dire* and thus, the defendant was not afforded the chance to voluntarily, intelligently, and knowingly waive his right to be present.  *Bird*, ¶ 37.

¶21    On appeal, we held that a trial court must explain to the defendant, on the record, his or her constitutional right to be present at all critical stages of the trial, including in-chambers individual *voir dire*.  Further, we held that "if a defendant chooses to waive that right, the court must obtain an on-the-record personal waiver by the defendant acknowledging that the defendant voluntarily, intelligently and knowingly waives that right."  *Bird*, ¶ 38.

¶22    The State contends that St. Germain was present at every stage of his trial.  The State points out that St. Germain was an active participant in the chamber discussions regarding Juror No. 7 and felt comfortable speaking up during other chamber discussions.

7

Further, the State asserts that St. Germain is seeking his constitutional right to be present for stages of the trial that did not take place and thus, there is no merit to his argument.

¶23 St. Germain argues the District Court should have advised him he had a right to call Juror No. 7 into chambers to inquire into the contents of the conversation between the juror and the victim's father. St. Germain attempts to apply the holding of *Bird*—that a trial court must advise the defendant of his or her constitutional right to be present at all critical stages of the trial—to a situation where the stage of the trial never actually took place, but merely, in St. Germain's opinion, *should have* taken place. We agree with the State that St. Germain cannot claim his constitutional right to be present at all critical stages of the trial was infringed at a stage that never occurred.

¶24 We conclude that St. Germain's right to be present at all critical stages of his trial was not violated. Because St. Germain was present at every stage of his trial, there is no basis to grant him relief on federal or state constitutional grounds because the right he now asserts is premised on stages of the trial that never occurred.

**Issue 2.**

¶25 ***Did the District Court abuse its discretion in refusing to allow St. Germain's defense investigator to testify as an expert regarding the victim's credibility?***

¶26 During St. Germain's defense, defense counsel attempted to call Ron Maki, St. Germain's investigator, as a witness. Defense counsel explained the purpose of Maki's testimony in response to the State's objection as follows:

> I'm not going to ask him anything specific about—I'm not going to ask [Maki], you know, any specifics that [H.M.] told him. He interviewed her . . . [h]e can testify to her demeanor, what she was like during the interview and if he thought she was credible or not.

8

The District Court ruled that Maki could not comment on H.M.'s credibility as the question of credibility was for only the jury to decide. The District Court informed defense counsel that Maki could testify to any prior statements made to him that were inconsistent with her trial testimony provided H.M. had the opportunity to review the alleged inconsistent statements.

¶27 The credibility of a witness lies exclusively within the province of the trier of fact. In this regard, "we generally will not allow an expert witness to comment on the credibility of the alleged victim." *State v. Hensley*, 250 Mont. 478, 481, 821 P.2d 1029, 1031 (1991). Expert testimony is admissible, however, for the purpose of helping the jury to assess the credibility of a child sexual assault complainant under certain circumstances. *State v. Geyman*, 224 Mont. 194, 729 P.2d 475 (1986). In *Geyman*, we created a narrow exception to the general rule that the credibility of witnesses is the exclusive province of the jury in criminal trials. *Riggs*, ¶ 21 (citing *Geyman*, 224 Mont. at 200, 729 P.2d at 479). We reasoned that an adult's reaction to being sexually assaulted is likely to be within reach of the jury's empathic imagination, so as to enable the jury to assess the complainant's truthfulness. A child's emotional reactions to such abuse, on the other hand, especially given the circumstances in which the child may find herself, and the familial relation that she may have to the alleged abuser, are likely to be outside the ken of the jury, which may find those reactions mystifying without the guidance of expert testimony. *Riggs*, ¶ 21; *Geyman*, 224 Mont. at 196-201, 729 P.2d at 477-80. The

9

*Geyman* rule was restated in *State v. Harris*, 247 Mont. 405, 410, 808 P.2d 453, 455 (1991), as follows:

> In cases involving sexual abuse of a minor child, we will allow expert testimony on the credibility of the alleged victim. This exception applies, however, only when the victim testifies at trial, and credibility is brought into question.

(Internal citations omitted.)

¶28    St. Germain argues the *Geyman* exception should be applied to the facts herein in order to protect his due process rights. Specifically, St. Germain claims that Maki should have been allowed to testify regarding H.M.'s credibility, despite the fact that H.M. made her accusations against St. Germain as an adult and testified against St. Germain as an adult. St. Germain asserts that Maki's testimony regarding H.M.'s credibility was the only way he could rebut witnesses' testimony regarding their observations of St. Germain. The State responds that St. Germain was free to bolster his own credibility and attack H.M.'s credibility at all points throughout the trial, but was not entitled the use of expert testimony to do so.

¶29    Our past cases in which we allowed expert testimony as to the credibility of a child sexual abuse victim involved young children. *Geyman* involved the testimony of a nine-year-old sexual abuse victim who testified at trial against the accused. *Geyman*, 224 Mont. at 195, 729 P.2d at 476. *Geyman* was followed by *State v. French*, 233 Mont. 364, 760 P.2d 86 (1988), where a school counselor testified as to the credibility of an eight-year-old sexual abuse victim. Later, expert testimony was admitted to address the credibility of a six-year-old sexual abuse victim in *State v. Hall*, 244 Mont. 161, 797 P.2d

10

183 (1990), and a nine-year-old sexual abuse victim in *State v. McLain*, 249 Mont. 242, 815 P.2d 147 (1991).

¶30 Although not cited by the parties herein, the *Hensley* case is particularly instructive. In *Hensley*, we were faced with the issue of whether expert testimony as to the credibility of an alleged child sexual abuse victim who was one month shy of seventeen years of age was admissible. In citing to a decision by the Court of Appeals of Wisconsin, *State v. Haseltine*, 352 N.W.2d 673 (Wis. App. 1984), we reasoned that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *Hensley*, 250 Mont. at 482, 821 P.2d at 1031. This Court held in *Hensley* that because the alleged victim was sixteen years old, was a competent witness, and had no physical or mental disability, that a jury was capable of assessing the credibility of the alleged victim. As such, expert testimony was not admissible as to the credibility of the alleged victim, despite the fact the alleged victim was under the age of eighteen, the age of majority. *Hensley*, 250 Mont. at 482, 821 P.2d at 1032.

¶31 H.M. was nineteen years old when she initially made her accusations against St. Germain, and was twenty years old at the time of trial. Although a majority of the sexual abuse had occurred when H.M. was a minor child, there is nothing in the record to indicate that H.M. was not competent to testify or that she was under some sort of physical or mental disability. Thus, facts supporting exclusion of the expert testimony are more compelling here than in *Hensley*. Because H.M. was twenty years old at the time of trial, and there was no evidence of any physical or mental disability, the jury was

11

capable of assessing her credibility without the assistance of expert testimony. We conclude the District Court did not abuse its discretion in excluding the testimony of Maki, as to H.M.'s credibility.

**Issue 3.**

¶32 ***Did St. Germain's trial counsel render ineffective assistance of counsel, depriving him of a fair trial?***

¶33 Article II, Section 24, of the Montana Constitution and the Sixth Amendment of the United States Constitution guarantee a person the right to the effective assistance of counsel. This Court had adopted the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), to evaluate claims of ineffective assistance of counsel. The defendant must demonstrate (1) that his counsel's performance fell below the range of competence required of attorneys in criminal cases and (2) that his counsel's deficient performance prejudiced his case. *State v. Hendricks*, 2003 MT 223, ¶ 6, 317 Mont. 177, ¶ 6, 75 P.3d 1268, ¶ 6. The first prong carries a strong presumption in favor of the State, as counsel possesses a wide latitude in determining what tactics to employ when defending a client. *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, ¶ 11, 97 P.3d 1095, ¶ 11. The defendant bears the burden to show that his counsel's performance fell below an objective standard of reasonableness. *State v. Grixti*, 2005 MT 296, ¶ 25, 329 Mont. 330, ¶ 25, 124 P.3d 177, ¶ 25.

¶34 St. Germain asserts several grounds for concluding defense counsel provided ineffective assistance. Before ruling on whether St. Germain has satisfied the two prongs of *Strickland* we must first determine if this direct appeal is the proper forum in which to

12

do so.  Generally, in addressing ineffective assistance of counsel claims, we ask "why" counsel did or did not perform as alleged and then seek to answer the question by reference to the record.  *Kougl*, ¶ 14 (citing *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20).  If the record on appeal explains "why," we will then address the issue on appeal.  If the claim is based on matters outside the record on appeal, we will refuse to address the claim and allow the defendant to file a postconviction proceeding where a record can be developed as to "why" counsel acted as alleged, thus allowing the court to determine whether counsel's performance was ineffective or merely a tactical decision.  *Kougl*, ¶ 14; *White*, ¶ 20.  Generally, counsel's failure to adequately investigate, or failure to prepare a defense, or failure to familiarize him or herself with critical areas of the applicable law are non-record based areas of representation.  *White*, ¶ 18 (citations omitted).  An exception to the requirement for a record-based answer as to why counsel acted or failed to act arises where no plausible justification exists to counter a claim of ineffective assistance of counsel on appeal.  *Kougl*, ¶ 15.

¶35    Failure to object to testimony may be record-based and thus appropriate for direct appeal, *State v. Notti*, 2003 MT 296, ¶ 8, 318 Mont. 146, ¶ 8, 79 P.3d 289, ¶ 8, but commonly the record does not reflect counsel's reasons for failing to object.  *See State v. Upshaw*, 2006 MT 341, ¶ 33, 335 Mont. 162, ¶ 33, ___ P.3d ___, ¶ 33 (citing *State v. Dyfort*, 2000 MT 338, ¶ 11, 303 Mont. 153, ¶ 11, 15 P.3d 464, ¶ 11).  If the record does not fully explain why counsel failed to object to the admission of evidence, the matter is best suited for postconviction proceedings.  *Notti*, ¶ 8.  For instance, decisions regarding the number and timing of objections lie within counsel's tactical discretion, which would

13

indicate that non-record based information explaining the tactics may be involved, and thus should be barred from record-based review. *White*, ¶ 16.

¶36 Applying the foregoing to the case at bar, we examine each of St. Germain's allegations individually.

### a. Failure to Attack H. M.'s Credibility

¶37 St. Germain first argues that defense counsel was "obviously unaware" of the law concerning the admissibility of the proposed expert testimony of Maki and that it was "evident" defense counsel had not properly researched the issue. St. Germain bases this conclusion on the fact that defense counsel made no argument regarding *Geyman* in an attempt to prove Maki's testimony was admissible. St. Germain concludes that he was left without a defense at trial because defeating H.M.'s credibility and the credibility of other State witnesses would ultimately be his only defense. However, because we have already concluded that the *Geyman*-type evidence offered by the defendant was properly excluded by the District Court, this issue cannot serve as a basis for concluding there was ineffective assistance of counsel, and we need not address it further. –

### b. Failure to Establish H.M.'s Prior Inconsistent Statements

¶38 St. Germain next argues that defense counsel inadequately handled the issue of alleged prior inconsistent statements made by H.M., specifically, that defense counsel failed to elicit from H.M. prior inconsistent statements she made to Maki. St. Germain notes that the District Court was forced to explain the rules of prior inconsistent statements to defense counsel. St. Germain further argues that releasing certain of the State's witnesses and H.M. from their subpoenas, along with the alleged failure to elicit

14

prior inconsistent statements from H.M., are demonstrations of the lack of preparation for trial by defense counsel on this issue.

¶39 The State argues there is nothing in the record that reveals H.M. actually made statements to Maki that were inconsistent with her trial testimony and that if these statements do indeed exist, they are not part of the record herein. The State argues that defense counsel was able to successfully admit evidence regarding certain of H.M.'s prior statements, including a letter written to a former boyfriend from which defense counsel was able to elicit testimony on rebuttal from H.M. that showed inconsistencies in her trial testimony regarding the time period H.M. lived at Lost Trail Hot Springs.

¶40 From the record, we note that after the District Court explained the use of prior inconsistent statements to defense counsel, defense counsel was allowed to recall H.M. to the witness stand in an attempt to elicit such a statement. Thus, it appears that the District Court cured any lack of understanding defense counsel had about procedures or her release of H.M. from her subpoena. However, during her examination of H.M., defense counsel was not able to elicit any prior inconsistent statements made to Maki, and thus, perhaps the statements did not exist. At the very least, these statements do not exist in the record, making the existence of such inconsistent statements a non-record issue. Therefore, we conclude that a postconviction relief hearing would be the appropriate remedy, so that a proper record can be made.

### c. Failure to Object to Other Crimes Evidence

¶41   Lastly, St. Germain challenges a miscellany of trial issues which he claims were the improper introduction of other crimes or wrongs evidence admitted because of the ineffective assistance of defense counsel.[1]

¶42   St. Germain alleges that defense counsel failed to object to a "plethora" of evidence introduced by the State regarding alleged sexual assaults against H.M. prior to and after the charges designated in the information, and also failed to object to evidence concerning physical assaults inflicted by St. Germain upon H.M., her best friend, and her half-brother during St. Germain's martial arts exercises. However, the record here does not explain the reasons for defense counsel's failure to object to this evidence. As noted above, decisions regarding the number and timing of objections generally lie within counsel's tactical discretion, making it necessary for non-record based information to explain the decisions made by counsel during trial. As result, we cannot entertain St. Germain's argument on appeal. *Novak*, ¶ 20; *White*, ¶ 16. A postconviction proceeding would allow counsel to explain her decisions entirely.

---

[1]St. Germain also asserts within his briefing the District Court erred in allowing testimony regarding his use of marijuana, but fails to relate that argument to the issue he has raised—that is, whether defense counsel's alleged failure to object to other crimes evidence constitutes ineffective assistance of counsel. M. R. App. P. 23(a)(4) requires a party to argue "the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities, statutes and pages of the record relied on." St. Germain does not raise this as a separate issue or present an argument in support of his assertion that the District Court erred. "Under Rule 23, M.R.App.P., it is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, ¶ 19, 983 P.2d 339, ¶ 19. Therefore, we will not address whether the District Court erred by allowing testimony regarding St. Germain's use of marijuana.

16

¶43 St. Germain argues that defense counsel could have raised a double jeopardy issue regarding whether incest is a lessor included offense of sexual intercourse without consent, but because defense counsel did not argue this point at trial, St. Germain contends it is now lost for appeal. St. Germain also argues that defense counsel failed to call a witness with "valuable knowledge" concerning H.M., her best friend, and St. Germain himself. As the record is completely silent regarding defense counsel's reasons for either not making the double jeopardy argument or failing to call other witnesses to testify, we would need to speculate as to the reasons for those decisions, and conclude that these issues are better examined within a postconviction relief proceeding. *Novak*, ¶ 20; *Hendricks*, ¶ 12.

¶44 The judgment of the District Court is affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JAMES C. NELSON

17