DA 06-0462

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 230

STATE OF MONTANA,

   Plaintiff and Respondent,

 v.

GILBERT BRUCE MEYERS,

   Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
       In and For the County of Broadwater, Cause No. DC 05-34,
       Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Cathleen Sohlberg, Office of the Public Defender, Missoula, Montana

   For Respondent:

   Honorable Mike McGrath, Attorney General; Carol E. Schmidt,
   Assistant Attorney General, Helena, Montana

   John T. Flynn, County Attorney, Townsend, Montana

        Submitted on Briefs: April 11, 2007

          Decided: September 11, 2007

Filed:

_____
        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Gilbert Bruce Meyers (Meyers) appeals from the judgment of the First Judicial District Court, Broadwater County, convicting him of assault on a child, a felony, in violation of § 45-5-212, MCA, and sentencing him therefor. We affirm in part, reverse in part, and remand.

¶2 The following issues are considered on appeal:

(1) Did Meyers's trial counsel render ineffective assistance of counsel by failing to object to or seek exclusion of testimony regarding alleged prior bad acts?

(2) Did the District Court impose an illegal sentence by:

a. Restricting Meyers's ability to reside in Broadwater County?

b. Requiring Meyers to pay restitution "in an amount to remain open" until the victims receive any help they need?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On August 20, 2005, Meyers repeatedly hit his eight-year-old son, Isaac, with a flip flop sandal. On August 26, 2005, the County Attorney filed an information charging Meyers with assault on a minor and a jury trial ensued. At trial, Meyers's wife, Victoria Meyers (Victoria), testified to the events of August 20. Victoria, who has five children with Meyers, testified that on the morning of August 20 she heard screaming coming from the boys' room and, upon investigating, discovered Meyers hitting Isaac with a sandal. Victoria testified that Meyers hit Isaac between twelve and fifteen times. She testified that she told Meyers to stop hitting Isaac, but Meyers insisted that he was "disciplining" their son. Victoria responded by saying that this was not "discipline" but

2

"abuse." She testified that she told Meyers, "[w]e are not going to live this way anymore" and ordered him to leave the room. After Meyers left the boys' room, Victoria gathered the children and traveled to the police station. Victoria testified that while in the car she asked the children, "'[d]o you guys want this to stop?' And all five of the children said, 'Yeah, Mom, it has to stop. We can't keep living like this.'" Meyers's trial counsel did not lodge any objections throughout Victoria's testimony.

¶4 The jury subsequently found Meyers guilty of assault on a minor, and the District Court sentenced him to four years in the Montana Department of Corrections, with all four years suspended upon conditions. Among others, the conditions mandated that Meyers, "if not employed in Broadwater County, shall not reside in Broadwater County, subject to the pending Parenting Plan" and that Meyers would "pay court ordered victim restitution" in an amount to "remain open until all victims have received the help they need." While the District Court's sentence and judgment of conviction sets forth the general rationale for these conditions, the pre-sentence investigation report provided detailed support for their imposition. In the report, Victoria stated that her "'kids are afraid to ride there [sic] bikes and sleep in their own beds because they know [Meyers] is around town, somewhere.'" She also related that Meyers's mental and physical abuse over the years made herself and all five children victims of Meyers's behavior. Victoria offered further testimony at the sentencing hearing. Meyers appeals.

**STANDARD OF REVIEW**

¶5 "Claims of ineffective assistance of counsel are mixed questions of law and fact for which our review is *de novo*." *State v. Morgan*, 2003 MT 193, ¶ 7, 316 Mont. 509,

3

¶ 7, 74 P.3d 1047, ¶ 7.  When an offender's sentence does not include one year or more of actual incarceration he or she is statutorily ineligible for sentence review by the Sentence Review Division.  In such cases, "we first review the sentence for legality to determine whether it falls within statutory parameters and, if so, we then examine whether the sentencing court abused its discretion in imposing the sentence."  *State v. Armstrong*, 2006 MT 334, ¶ 8, 335 Mont. 131, ¶ 8, 151 P.3d 46, ¶ 8.  "[W]here the issue . . . is whether [a] court followed applicable statutory requirements, the question is one of law over which our review is plenary."  *State v. Muhammad*, 2002 MT 47, ¶ 17, 309 Mont. 1, ¶ 17, 43 P.3d 318, ¶ 17.

## DISCUSSION

**¶6     1. Did Meyers's trial counsel render ineffective assistance of counsel by failing to object to or seek exclusion of testimony regarding alleged prior bad acts?**

¶7     Meyers argues that his trial counsel's failure to seek exclusion of and object to Victoria's testimony constituted ineffective assistance of counsel.  Meyers asserts that Victoria's statements that "we are not going to live this way anymore" and "this has to stop" represented improper evidence of prior bad acts to show action in conformity with character.  The State asserts that Victoria's statements were permissible as evidence of Meyers's "habit of disciplining his children."  In the alternative, the State argues that even if Victoria's statements were impermissible as prior bad acts, they were not prejudicial.

¶8     Both the Montana Constitution and the Sixth Amendment of the United States Constitution guarantee an individual the right to effective assistance of counsel.  When

4

reviewing claims of ineffective assistance of counsel we have adopted the two-prong test defined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). This test places the burden on the defendant to show that his "counsel's performance fell short of the range of competence required of attorneys in criminal cases and that his counsel's deficient performance was prejudicial to his case." *State v. Hendricks*, 2003 MT 223, ¶ 6, 317 Mont. 177, ¶ 6, 75 P.3d 1268, ¶ 6. With respect to the first prong, there is a "strong presumption" that trial counsel's actions are indicative of trial strategy and within the broad scope of reasonable professional conduct. *Hendricks*, ¶ 7.

¶9 However, before reaching the merits of an ineffective assistance of counsel claim, we must first determine that the allegations are properly before the Court. *State v. Dyfort*, 2000 MT 338, ¶ 8, 303 Mont. 153, ¶ 8, 15 P.3d 464, ¶ 8. "Only when the record will fully explain <u>why</u> counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal." *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20 (emphasis added). Conversely, where allegations of ineffective assistance of counsel "cannot be documented from the record," the claim must be pursued in a petition for post-conviction relief, pursuant to § 46-21-105(2), MCA. *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, ¶ 12, 973 P.2d 233, ¶ 12.

¶10 Ineffective assistance of counsel claims regarding omissions of trial counsel frequently are ill-suited for direct appeal. While "[f]ailure to object to testimony may be record-based and thus appropriate for direct appeal, . . . commonly the record does not reflect counsel's reasons for failing to object." *State v. St. Germain*, 2007 MT 28, ¶ 35, 336 Mont. 17, ¶ 35, 153 P.3d 591, ¶ 35 (internal citation omitted). Generally, an

ineffective assistance of counsel claim based on an omission indicates that non-record based information explains trial counsel's decisions, thereby making the claim inappropriate for direct appeal. *St. Germain*, ¶ 35.

¶11     Here, Meyers alleges that his trial counsel's failure to submit an order in limine to exclude Victoria's testimony of alleged prior bad acts and his subsequent failure to object to Victoria's testimony comprised ineffective assistance of counsel.  However, in both instances the record is silent as to "why" Meyers's trial counsel failed to take these actions.  Therefore, Meyers's complaint rests on non-record based information and is inappropriate for direct appeal.  Consequently, we dismiss Meyers's claim of ineffective assistance of counsel without prejudice to raising the claim in post-conviction relief proceedings.  Accordingly, we do not reach the issue of whether the testimony was improper prior bad act testimony or proper testimony regarding Meyers's habit of discipline.

¶12     **2. Did the District Court impose an illegal sentence by:**

        **a.  Restricting Meyers's ability to reside in Broadwater County?**

¶13     Meyers complains that the District Court imposed an illegal sentence when it restricted him from residing in Broadwater County unless he was also employed in Broadwater County.  Meyers argues that the condition is illegal because it is not reasonably related to the objectives of rehabilitation or the protection of the victim and society.  In support of this argument, Meyers likens his residency restriction to the banishment condition addressed in *State v. Muhammad*.  There, we held that a

6

banishment condition was not reasonably related to the goals of rehabilitation and the protection of the victim and society. *Muhammad*, ¶ 28.

¶14 The sentencing statutes provide that a sentencing judge may impose reasonable restrictions or conditions on suspended sentences that are "considered necessary for rehabilitation or for the protection of the victim or society." Section 46-18-201(4)(o), MCA. Such conditions may include restrictions on the defendant's freedom of association and freedom of movement. Section 46-18-202(1)(c), (d), MCA. Accordingly, each restriction must be analyzed to determine whether it is reasonably related to the objectives of rehabilitation or protection of the victim and society. We found the condition at issue in *Muhammad* to be an unreasonable condition. *Muhammad*, ¶ 28.

¶15 In *Muhammad*, the defendant entered a plea of guilty subject to a non-binding plea agreement for the offense of sexual intercourse without consent. *Muhammad*, ¶¶ 7, 9. As a condition to his suspended sentence, Muhammad was barred from residing or working in Cascade County. *Muhammad*, ¶ 12. The defendant challenged the condition as unreasonable and a violation of his constitutional rights. *Muhammad*, ¶ 20. While not reaching his constitutional argument, we agreed that the condition was not reasonably related to his rehabilitation or protection of the victim and society. *Muhammad*, ¶ 29. The record in *Muhammad* stated "no reasons for the imposition of the condition" but did establish that the district court "had facts before it at the time of sentencing [that] would render the condition unduly severe and punitive to the point of being unrelated to rehabilitation." *Muhammad*, ¶ 28. We reasoned that the district court had also "imposed less restrictive means to rehabilitate Muhammad and to protect the victim and society."

7

*Muhammad*, ¶ 28. These less restrictive means included requiring that he complete sex offender treatment, refrain from contact with females under the age of eighteen, and not live within two blocks of where children assemble. *Muhammad*, ¶ 28. Because the condition was broad and there were other less restrictive means of fulfilling the goals of rehabilitating Muhammad and protecting society, we held that the condition was unreasonable and therefore in violation of § 46-18-202(1)(e), MCA (1997).

¶16 Here, although Meyers repeatedly uses the term "banishment condition," it is clear the condition does not completely "banish" him from Broadwater County. Rather, the condition imposes a residency restriction, which Meyers may be relieved from if he becomes employed in the county. Indeed, even if Meyers is not employed in Broadwater County, he is allowed to be present in the county, so long as the county is not his residence. Further, the District Court made the residency restriction subject to the pending parenting plan, which may well lead to further refinement or possible elimination of the restriction, depending on the development of that plan.

¶17 Most importantly, and in contrast to *Muhammad*, the pre-sentence investigation report discusses the need to narrow Meyers's ability to reside in Broadwater County. The victims have expressed fear of Meyers to the point that it has disrupted their participation in every day activities in the community. Victoria reported that Meyers "'has no reason to be in Townsend'" and "she believes the only reason [Meyers] is still living in Townsend is so that he can still have control over their lives, 'even if it is just through terrorizing [them] . . . .'" The need to protect the victims in this case led the court to impose, as a corollary to the residency restriction, a "no contact" condition as well. As

such, Meyers may not contact Victoria or any of the children until the pending parenting plan is in place. The record is silent as to lesser restrictive means the court may have used to provide protection to the victims herein.

¶18 Because the residency restriction is designed to protect the victims and yet allow Meyers limited ability to be present in the county, we conclude that the District Court imposed an appropriately tailored condition, and that it satisfies the requirement to be reasonably related to the protection of the victims and society.

¶19 Finally, because we conclude the condition restricting Meyers's ability to reside in Broadwater County does not constitute an illegal sentence, we thus consider if the District Court abused its discretion by imposing the condition, as this sentence falls within the narrow group of cases subject to our two-tiered review. *State v. Herd*, 2004 MT 85, ¶¶ 22-23, 320 Mont. 490, ¶¶ 22-23, 87 P.3d 1017, ¶¶ 22-23. The District Court had before it a pre-sentence investigation report and victim testimony indicating that Meyers had continued to attempt to control their lives, if not by physical force, but by "terrorizing [them]," and that the family's normal life had been disrupted by their fear of his presence. Victoria testified that Meyers had no reason to live in Townsend except to control their lives. The District Court left the door open to changing the condition pursuant to a parenting plan to be adopted within the pending dissolution proceeding. The District Court's decision is thus supported by substantial evidence and we conclude that the residency restriction was not an abuse of discretion. Consequently, we affirm the District Court.

**b. Requiring Meyers to pay restitution "in an amount to remain open" until the victims receive any help they need?**

¶20 Last, Meyers asserts that the District Court exceeded its statutory authority when it failed to set the amount of restitution Meyers must pay to the victims. The State concedes that the District Court erred by leaving the amount of restitution "open."

¶21 "A district court's authority to impose a sentence is defined and constrained by statute." *State v. Ruiz*, 2005 MT 117, ¶ 12, 327 Mont. 109, ¶ 12, 112 P.3d 1001, ¶ 12. Likewise, a sentence is illegal when it is not based on statutory authority. *Ruiz*, ¶ 12. Pursuant to § 46-18-244, MCA, "[t]he court shall specify the total amount of restitution that the offender shall pay." The District Court erred by failing to specify the total amount of restitution Meyers must pay to the victims. Accordingly we vacate this condition and remand to the District Court for re-imposition of the restitution requirement.

¶22 Affirmed in part, reversed in part, and remanded to the District Court for further proceedings consistent herewith.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

10