JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 Following a jury trial in the Thirteenth Judicial District, Rusty Lee-Ray Russell (“Russell”) was found guilty of deliberate homicide (under a felony homicide theory), aggravated assault, robbery by accountability, and aggravated assault by accountability. He was sentenced to eighty years (with ten suspended) for the deliberate homicide. He also received ten years for each of the remaining counts, including the aggravated assault which was the predicate felony for the felony homicide charge. Russell appeals, arguing his conviction for aggravated assault violates the double jeopardy clause of the Montana Constitution. Russell also challenges the jury instructions given in the case, and claims he was denied effective assistance of counsel. We affirm in part, and reverse in part.
¶2 We restate the issues as follows:
¶3 I. Did the District Court err by denying Russell’s motion to dismiss his conviction for aggravated assault, where his felony homicide conviction was predicated on the same assault?
¶4 II. Was the performance of Russell’s trial counsel constitutionally deficient?
¶5 III. Was Russell’s constitutional right to a unanimous jury verdict violated?
BACKGROUND
¶6 On Monday night, April 25, 2005, Russell and his friend Brandon Spotted Wolf (“Spotted Wolf’) spent the evening drinking their way across Billings. Though they were underage, they convinced two people to buy them a couple bottles of whiskey, which they drank in various back alleys and in a private residence over the course of the evening. Early the next morning, they found themselves outside the Saint Vincent De Paul Thrift Store, where they ran into Henry Rideshorse (“Rideshorse”). Rideshorse had a bottle of vodka; the boys had about half a bottle of whiskey left. They decided to share the two bottles amongst the three of them, and moved into the back alley behind the thrift store where they could drink without being seen by police.
*303 ¶7 Near the loading docks behind the store, several transients were sleeping. Spotted Wolf approached one of the sleeping men, Dale Wallin. Spotted Wolf demanded money or alcohol from Wallin, but Wallin did not respond. Russell drew a knife and gave it to Spotted Wolf. Spotted Wolf slashed Wallin’s face, gave the knife back to Russell and said, “Show me what you’re made of, man, show me what you can do.” Russell took the knife and stabbed Wallin several times in the back.
¶8 Russell turned and walked further back into the alley, still holding the knife. There he saw another transient, John Gewanski, sleeping next to a dumpster. Both Rideshorse and Spotted Wolf testified that they saw Russell approach Gewanski, and heard Gewanski make several grunting noises, as if he were being punched or stabbed. The record contains conflicting evidence as to whether or not Spotted Wolf joined Russell in assaulting Gewanski. Blood from both victims was found on both Russell’s and Spotted Wolfs clothing. Gewanski sustained numerous stab wounds and died in the makeshift shelter where he had been sleeping when he was attacked.
¶9 Russell and Spotted Wolf turned their attention back to Wallin, and began attacking him again. Rideshorse intervened and tried to protect Wallin. Russell punched Rideshorse, and said to Spotted Wolf, “Let’s do this guy, man.” Spotted Wolf testified that he convinced Russell not to kill Rideshorse, and the two fled the scene. Rideshorse helped Wallin to his feet, ran to the street, and flagged down a police car for help. In the meantime, Wallin stumbled several blocks to the Rescue Mission, where he was taken to the hospital. Wallin survived his multiple stab wounds.
¶10 Spotted Wolf was found the next morning, passed out with a blood alcohol level exceeding 0.3, blood on his clothing, and a bloody knife in his pants. He was taken to the hospital and treated for alcohol poisoning, and later arrested. Russell was apprehended by the police the following day.
¶11 Spotted Wolf pled guilty to one count of deliberate homicide by accountability, one count of aggravated assault, and one count of robbery. In exchange for his plea and testimony, Spotted Wolf received a reduced sentence.
¶12 Russell was charged with four offenses: the deliberate homicide of Gewanski, the aggravated assault of Wallin, robbery by accountability, and aggravated assault of Gewanski by accountability. The deliberate homicide charge was brought under § 45-5-102(1)(b), MCA, the felony homicide statute. The information identified the *304 aggravated assault of Wallin as the underlying felony for the felony homicide charge.
¶13 Spotted Wolf testified against Russell at his trial. When asked why he and Russell attacked Wallin, Spotted Wolf replied, “I don’t know, because we were drunk.”
¶14 At the close of trial, Russell requested that the court specifically instruct the jury that, if they convicted Russell of deliberate homicide under a felony homicide theory, they must all agree on the particular act or acts he committed. The District Court refused the instruction, but issued a general unanimity instruction instead. The jury found Russell guilty on all four counts.
¶15 Prior to sentencing, Russell moved to dismiss his conviction for aggravated assault. Russell argued that his conviction resulted in multiple punishments in violation of Article II, Section 25 of the Montana Constitution. The District Court denied Russell’s motion to dismiss, and sentenced Russell to eighty years, with ten suspended, for the felony homicide. Russell also received ten years for each of the remaining counts, to run consecutively with the eighty-year sentence, but concurrently with each other.
DISCUSSION
¶16 I. Did the District Court err by denying Russell’s motion to dismiss his conviction for aggravated assault, where his felony homicide conviction was predicated on the same assault?
¶17 We review a district court’s denial of a motion to dismiss in a criminal case de novo. State v. Burkhart, 2004 MT 372, ¶ 39, 325 Mont. 27, ¶ 39, 103 P.3d 1037, ¶ 39.
¶18 Russell argues that the District Court erred in refusing to grant his motion to dismiss his conviction for aggravated assault. The felony homicide charge in Count I was predicated on the charge for aggravated assault in Count II. Thus, Russell asserts, the underlying felony in Count II should have been merged with the felony homicide charge in Count I. Russell claims that the District Court’s refusal to dismiss his conviction for aggravated assault placed him in double jeopardy for the same aggravated assault charge-a result prohibited by Article II, Section 25 of the Montana Constitution.
¶19 Although Russell frames the issue as a double jeopardy issue under Article II, Section 25 of the Montana Constitution, “we have repeatedly recognized that courts should avoid constitutional issues whenever possible.” In re S.H., 2003 MT 366, ¶ 18, 319 Mont. 90, ¶ 18, 86 P.3d 1027, ¶ 18. Here, determining whether the District Court erred *305 in failing to dismiss Count II can be resolved through application of our code of criminal procedure §§ 46-11-410(2)(a) and 46-1-202(9), MCA.
¶20 Section 46-11-410, MCA, states, in pertinent part, as follows:
(1) When the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense.
(2) A defendant may not, however, be convicted of more than one offense if:
(a) one offense is included in the other ....
¶21 Section 46-1-202(9), MCA, defines “included offense” as follows:
“Included offense” means an offense that:
(a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged ....
¶22 As used in § 46-1-202(9)(a), MCA, the term “facts” refers to the statutory elements of the offense, not the individual facts of the case. State v. Beavers, 1999 MT 260, ¶ 30, 296 Mont. 340, ¶ 30, 987 P.2d 371, ¶ 30.
¶23 Here, Russell was charged with felony homicide under § 45-5-102(1)(b), MCA. Felony homicide can be accomplished by multiple means under the statute.
A person commits the offense of deliberate homicide if ... the person attempts to commit, commits, or is legally accountable for the attempt or commission of robbery, sexual intercourse without consent, arson, burglary, kidnapping, aggravated kidnapping, felonious escape, assault with a weapon, aggravated assault, or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being.
Section 45-5-102(1)(b), MCA. The statute lists a myriad of possible predicate felonies: robbery, sexual intercourse without consent, arson, burglary, kidnapping, and so on. The State charged Russell by information with deliberate homicide under § 45-5-102(1)(b), MCA, and identified aggravated assault as the predicate felony. The court defined the felony homicide charge to include aggravated assault in its instructions to the jury. Thus the charge, as applied to Russell, included aggravated assault as an element of felony homicide.
¶24 At oral argument, the State conceded that the same evidence was used to prove the stand-alone aggravated assault charge in Count II, and the predicate felony relied upon in the felony homicide charge in Count I. An offense is an included offense if it “is established by proof *306 of the same or less than all the facts required to establish the commission of the offense charged....” Section 46-1-202(9)(a), MCA. In the unique context of felony homicide, the predicate offense is, of necessity, an included offense, as well as an element of the felony homicide itself. As applied in this case, aggravated assault is both an included offense and an element of felony homicide.
¶25 Under § 46-11-410(1)-(2)(a), MCA, “A defendant may not ... be convicted of more than one offense” arising out of “the same transaction” if “one offense is included in the otherAssuming that the assault on Wallin and the killing of Gewanski were part of the same transaction,[1] then under § 46-11-410(2)(a), MCA, Russell’s conviction of felony homicide precludes a conviction on the aggravated assault charge in Count II.
¶26 In his dissent, Justice Rice relies heavily on our 1981 decision in State v. Close, 191 Mont. 229, 623 P.2d 940 (1981). The Close decision is of very limited value in the present case. The basic premise of the Close rationale is false. The Close Court engaged in a Blockburger analysis and held that “it is clear that proof of felony homicide will not necessarily require proof of either robbery or aggravated kidnapping.” Close, 191 Mont. at 246, 623 P.2d at 950. One can commit felony homicide without committing robbery, or commit aggravated kidnapping without committing felony homicide. Therefore, Blockburger does not require the conclusion that felony homicide and the underlying felony merge.” Close, 191 Mont. at 247, 623 P.2d at 950. Although the Court was correct that, in the abstract, one can commit felony murder without necessarily committing aggravated kidnapping or can commit aggravating kidnapping without committing felony homicide, a defendant cannot commit the offense of felony homicide without committing a predicate felony offense. Thus when the State uses an offense (such as kidnapping or robbery or, as here, assault) as a predicate offense in its charge of felony homicide, the accused cannot be found guilty of felony homicide without having committed the predicate offense of kidnapping, robbery, or assault. When the State chooses to charge the offenses in that fashion, the offenses merge. The predicate offense becomes a lesser included offense of the felony homicide charge. Sections 46-11-410, 46-1-202(9), MCA.
*307 ¶27 The dissent argues that where there are two victims, the State should be able to hold the defendant separately accountable for each crime. The dissent’s criticism is valid but misdirected. The discretion to charge whom with what lies with the State, not this Court. Here, the State could have charged Russell with felony homicide of Gewanski using robbery as the predicate felony, and then charged Russell separately with felony assault of Wallin, in which case there would have been no merger of the assault and the homicide convictions. Alternatively, the State could have avoided merger altogether by charging Russell with all three crimes separately: first, the deliberate homicide of Gewanski under § 45-5-102(a), MCA; second, robbery by accountability under §§ 45-4-40l(l)(a) and 45-2-302(3), MCA; and finally, the aggravated assault of Wallin under § 45-5-202, MCA. Contrary to the dissent’s characterization, the merger of the homicide and assault convictions in this felony homicide case arises not from a “stupefying leap” by this Court, but from the State’s choice in framing the charges.
¶28 Our decision does not, as the dissent suggests, give Russell a “free pass” for Wallin’s assault. As we painstakingly outline above, the State had to prove each element of aggravated assault in order to convict Russell for felony homicide in this case. Russell was punished for both the predicate offense, Wallin’s assault, and Gewanski’s homicide, when he was charged and convicted under § 45-5-102, MCA.
¶29 Finally, under § 45-5-102, MCA, felony homicide is punishable by death, by life imprisonment, or by imprisonment for a term of not less than 10 years or more than 100 years. The dissent’s hyperbolic “free pass” argument ignores the fact that where the felon is sentenced to death or life in prison for felony homicide, any additional punishment for the underlying felony would have no practical effect.
¶30 Accordingly, we hold that the District Court erred in refusing to dismiss Russell’s conviction for aggravated assault under Count II.
¶31 II. Was the performance of Russell’s trial counsel constitutionally deficient?
¶32 Russell argues that his trial counsel’s failure to move to exclude Henry Rideshorse’s testimony constituted ineffective assistance of counsel. A claim of ineffective assistance of counsel presents mixed questions of law and fact which we review de novo. State v. Herman, 2008 MT 187, ¶ 10, 343 Mont. 494, ¶ 10, 188 P.3d 978, ¶ 10.
¶33 To determine whether counsel’s performance was constitutionally deficient, we apply the two-prong test adopted by the United States Supreme Court in Strickland. Strickland v. Washington, 466 U.S. 668, *308 687, 104 S. Ct. 2052, 2064 (1984); Whitlow v. State, 2008 MT 140, ¶ 10, 343 Mont. 90, ¶ 10, 183 P.3d 861, ¶ 10. Before we apply the Strickland test, however, we must first determine whether the ineffective assistance of counsel claim is record-based or not. State v. St. Germain, 2007 MT 28, ¶ 34, 336 Mont. 17, ¶ 34, 153 P.3d 591, ¶ 34. Claims involving “omissions of trial counsel frequently are ill-suited for direct appeal.” State v. Meyers, 2007 MT 230, ¶ 10, 339 Mont. 160, ¶ 10, 168 P.3d 645, ¶ 10. While the failure to object to a witness’s testimony may be record-based and thus appropriate for resolution on direct appeal, commonly the record does not reflect counsel’s reasons for failing to object. St. Germain, ¶ 35. We have held that “[i]f the record does not fully explain why counsel failed to object to the admission of evidence, the matter is best suited for postconviction proceedings.” St. Germain, ¶ 35.
¶34 Here, Russell asserts that his lawyer should have moved to exclude Rideshorse’s testimony. He contends that Rideshorse was not competent to be a witness because he was heavily intoxicated the night of the crime, and potentially suffered from a mental disability. Russell’s counsel did not move to exclude Rideshorse as a witness. At trial, defense counsel cross-examined Rideshorse about his alcohol use and level of intoxication the night of the crime in an attempt to impeach him, but did not broach the subject of Rideshorse’s alleged mental disability.
¶35 In order to prevail on an ineffective assistance of counsel claim, the appellant must show that his counsel’s performance “fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances.” Whitlow, ¶ 20. Here, the record does not fully explain the surrounding circumstances, including why defense counsel failed to move to exclude Rideshorse’s testimony. Prior to trial, and without the court’s permission or knowledge, defense counsel caused the district court clerk to issue a subpoena duces tecum to several hospitals for Rideshorse’s medical records. Counsel then moved the court for an in-camera review of the records. The court denied the motion, ordered counsel to turn the records over to the court immediately, and prohibited counsel from referencing any information contained within the records at trial. Russell alleges that his counsel’s “bungled attempts” to obtain Rideshorse’s medical records prejudiced his defense by preventing him from moving to exclude Rideshorse’s testimony and from cross-examining Rideshorse as to his alleged disabilities. The record before us does not fully explain why defense *309 counsel took this particular course of action or why counsel failed to object to Rideshorse’s testimony. This issue is best suited for review in a post-conviction proceeding which will permit further inquiry into the matter. We dismiss this issue without prejudice.
¶36 III. Was Russell’s constitutional right to a unanimous jury verdiict violated?
¶37 At the close of the trial, Russell offered the following jury instruction, which was refused by the District Court:
The defendant is charged with the offence [sic] of Deliberate Homicide/Felony murder. The Defendant may be found guilty if the proof shows beyond a reasonable doubt the Defendant committed any one or more of such acts, but in order to find the Defendant guilty, all the jurors must agree that the Defendant committed the same act or acts. The particular act or acts committed so agreed upon be states [sic] in the verdict.
Instead, the District Court delivered a general unanimity instruction:
The law requires the jury verdict in this case to be unanimous. Thus, all twelve of you must agree in order to reach a verdict whether the verdict be guilty or not guilty.
Russell claims he was entitled to a specific unanimity instruction in this case, and that the District Court erred by refusing to give his proposed instruction.
¶38 We review jury instructions in criminal cases to determine “whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case.” State v. Swann, 2007 MT 126, ¶ 32, 337 Mont. 326, ¶ 32, 160 P.3d 511, ¶ 32. A district court has broad discretion when it instructs a jury; our review of a district court’s decision regarding jury instructions is confined to determining whether the court abused its discretion. Swann, ¶ 32.
¶39 A criminal defendant’s right to a unanimous jury verdict is protected by Article II, Section 26 of the Montana Constitution. State v. Vernes, 2006 MT 32, ¶ 21, 331 Mont. 129, ¶ 21, 130 P.3d 169, ¶ 21; State v. Weaver, 1998 MT 167, ¶ 26, 290 Mont. 58, ¶ 26, 964 P.2d 713, ¶ 26. In Vernes, we explained: “Unanimity means more than an agreement that the defendant has violated the statute in question; it requires substantial agreement as to the principal factual elements underlying a specific offense.” Vernes, ¶ 21.
¶40 Russell argues that like the defendant in Weaver, he is entitled to a specific unanimity instruction. In Weaver, the defendant was convicted of two counts of sexual assault for acts which spanned a period of five months for one count, and five years for the other count. *310 Weaver, ¶¶ 8, 13. We reversed the convictions, and held that the district court should have specifically instructed the jury that it had to reach “a unanimous verdict as to at least one specific underlying act of sexual assault for each count.” Weaver, ¶ 40. The instructions in Weaver were faulty because each count alleged more than one unlawful act, Weaver, ¶¶ 17, 38, and so there was a risk that the conviction occurred as a result of “different jurors concluding that the defendant committed different unlawful acts....” Vernes, ¶ 23.
¶41 Russell urges us to view the events occurring the evening of April 25, 2005, as consisting of two separate attacks: first, the assault on Wallin, and second, the homicide of Gewanski. Russell implies that the felony homicide charge improperly charges him with two distinct crimes as a continuous course of conduct, and that such a result is prohibited by Weaver. The instant case, however, is distinguishable from Weaver. While Weaver’s sexual attacks spanned the course of several months, Russell’s unlawful acts all took place in one night. Rideshorse testified at trial that Russell assaulted Wallin, moved on to Gewanski, and then resumed his attack on Wallin. The assault and the homicide took place in the same back alley, only feet away from each other. Although a count of felony homicide necessarily involves two or more crimes-homicide and the underlying felony-we reject the implication that a felony homicide charge automatically warrants a specific unanimity instruction.
¶42 In the instant case, no specific unanimity instruction was necessary. To convict Russell of the felony homicide of Gewanski, the State had to prove that Russell was guilty of the underlying felony-the aggravated assault of Wallin. The court’s instructions clearly established the elements of felony homicide, and clearly identified the aggravated assault of Wallin as the underlying felony.
¶43 The court’s instructions with respect to the remaining three counts also identified each element of each respective crime, and were equally clear. We conclude that the instructions given by the District Court fully and fairly instructed the jury on the law applicable to the case. As such, we cannot say that the District Court abused its discretion by refusing Russell’s proposed specific unanimity instruction.
CONCLUSION
¶44 We reverse the District Court’s order denying Russell’s motion to dismiss his conviction for aggravated assault. Aggravated assault was an included element of felony homicide under § 45-5-102(1)(b), MCA, *311 as charged and applied in this case. Article II, Section 25 of the Montana Constitution prohibits the State from convicting and punishing Russell again for the same aggravated assault. Accordingly, we vacate Russell’s conviction for aggravated assault under Count II of the information. We conclude that the District Court did not abuse its discretion in denying Russell’s proposed specific unanimity jury instruction. Finally, Russell’s ineffective assistance of counsel claim is not record-based, thus we dismiss it without prejudice.
JUSTICES COTTER, WARNER and MORRIS concur.

 Although Justice Nelson makes an argument that the predicate offense of aggravated assault on Wallin (Count II) was not sufficiently causally related to the killing of Gerwanski to justify the felony homicide charge, that issue was not raised or briefed in this appeal.