DA 06-0767

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 417

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RUSTY LEE-RAY RUSSELL,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 05-0436
Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James B. Wheelis, Chief Public Defender; Shannon L. McDonald,
Assistant Public Defender; Helena, Montana

          Gem Koan Mercer (argued); Attorney at Law, Missoula, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; John A. Paulson
(argued), Assistant Attorney General; Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney; Billings, Montana

Argued: April 11, 2008
Submitted: April 23, 2008
Decided: December 15, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Following a jury trial in the Thirteenth Judicial District, Rusty Lee-Ray Russell ("Russell") was found guilty of deliberate homicide (under a felony homicide theory), aggravated assault, robbery by accountability, and aggravated assault by accountability. He was sentenced to eighty years (with ten suspended) for the deliberate homicide. He also received ten years for each of the remaining counts, including the aggravated assault which was the predicate felony for the felony homicide charge. Russell appeals, arguing his conviction for aggravated assault violates the double jeopardy clause of the Montana Constitution. Russell also challenges the jury instructions given in the case, and claims he was denied effective assistance of counsel. We affirm in part, and reverse in part.

¶2 We restate the issues as follows:

¶3 I. Did the District Court err by denying Russell's motion to dismiss his conviction for aggravated assault, where his felony homicide conviction was predicated on the same assault?

¶4 II. Was the performance of Russell's trial counsel constitutionally deficient?

¶5 III. Was Russell's constitutional right to a unanimous jury verdict violated?

## BACKGROUND

¶6 On Monday night, April 25, 2005, Russell and his friend Brandon Spotted Wolf ("Spotted Wolf") spent the evening drinking their way across Billings. Though they were underage, they convinced two people to buy them a couple bottles of whiskey, which they drank in various back alleys and in a private residence over the course of the evening. Early the next morning, they found themselves outside the Saint Vincent De

2

Paul Thrift Store, where they ran into Henry Rideshorse ("Rideshorse"). Rideshorse had a bottle of vodka; the boys had about half a bottle of whiskey left. They decided to share the two bottles amongst the three of them, and moved into the back alley behind the thrift store where they could drink without being seen by police.

¶7     Near the loading docks behind the store, several transients were sleeping. Spotted Wolf approached one of the sleeping men, Dale Wallin. Spotted Wolf demanded money or alcohol from Wallin, but Wallin did not respond. Russell drew a knife and gave it to Spotted Wolf. Spotted Wolf slashed Wallin's face, gave the knife back to Russell and said, "Show me what you're made of, man, show me what you can do." Russell took the knife and stabbed Wallin several times in the back.

¶8     Russell turned and walked further back into the alley, still holding the knife. There he saw another transient, John Gewanski, sleeping next to a dumpster. Both Rideshorse and Spotted Wolf testified that they saw Russell approach Gewanski, and heard Gewanski make several grunting noises, as if he were being punched or stabbed. The record contains conflicting evidence as to whether or not Spotted Wolf joined Russell in assaulting Gewanski. Blood from both victims was found on both Russell's and Spotted Wolf's clothing. Gewanski sustained numerous stab wounds and died in the makeshift shelter where he had been sleeping when he was attacked.

¶9     Russell and Spotted Wolf turned their attention back to Wallin, and began attacking him again. Rideshorse intervened and tried to protect Wallin. Russell punched Rideshorse, and said to Spotted Wolf, "Let's do this guy, man." Spotted Wolf testified that he convinced Russell not to kill Rideshorse, and the two fled the scene. Rideshorse

helped Wallin to his feet, ran to the street, and flagged down a police car for help. In the meantime, Wallin stumbled several blocks to the Rescue Mission, where he was taken to the hospital. Wallin survived his multiple stab wounds.

¶10 Spotted Wolf was found the next morning, passed out with a blood alcohol level exceeding 0.3, blood on his clothing, and a bloody knife in his pants. He was taken to the hospital and treated for alcohol poisoning, and later arrested. Russell was apprehended by the police the following day.

¶11 Spotted Wolf pled guilty to one count of deliberate homicide by accountability, one count of aggravated assault, and one count of robbery. In exchange for his plea and testimony, Spotted Wolf received a reduced sentence.

¶12 Russell was charged with four offenses: the deliberate homicide of Gewanski, the aggravated assault of Wallin, robbery by accountability, and aggravated assault of Gewanski by accountability. The deliberate homicide charge was brought under § 45-5-102(1)(b), MCA, the felony homicide statute. The information identified the aggravated assault of Wallin as the underlying felony for the felony homicide charge.

¶13 Spotted Wolf testified against Russell at his trial. When asked why he and Russell attacked Wallin, Spotted Wolf replied, "I don't know, because we were drunk."

¶14 At the close of trial, Russell requested that the court specifically instruct the jury that, if they convicted Russell of deliberate homicide under a felony homicide theory, they must all agree on the particular act or acts he committed. The District Court refused the instruction, but issued a general unanimity instruction instead. The jury found Russell guilty on all four counts.

4

¶15 Prior to sentencing, Russell moved to dismiss his conviction for aggravated assault. Russell argued that his conviction resulted in multiple punishments in violation of Article II, Section 25 of the Montana Constitution. The District Court denied Russell's motion to dismiss, and sentenced Russell to eighty years, with ten suspended, for the felony homicide. Russell also received ten years for each of the remaining counts, to run consecutively with the eighty-year sentence, but concurrently with each other.

## DISCUSSION

¶16 **I. Did the District Court err by denying Russell's motion to dismiss his conviction for aggravated assault, where his felony homicide conviction was predicated on the same assault?**

¶17 We review a district court's denial of a motion to dismiss in a criminal case *de novo*. *State v. Burkhart*, 2004 MT 372, ¶ 39, 325 Mont. 27, ¶ 39, 103 P.3d 1037, ¶ 39.

¶18 Russell argues that the District Court erred in refusing to grant his motion to dismiss his conviction for aggravated assault. The felony homicide charge in Count I was predicated on the charge for aggravated assault in Count II. Thus, Russell asserts, the underlying felony in Count II should have been merged with the felony homicide charge in Count I. Russell claims that the District Court's refusal to dismiss his conviction for aggravated assault placed him in double jeopardy for the same aggravated assault charge—a result prohibited by Article II, Section 25 of the Montana Constitution.

¶19 Although Russell frames the issue as a double jeopardy issue under Article II, Section 25 of the Montana Constitution, "we have repeatedly recognized that courts should avoid constitutional issues whenever possible." *In re S.H.*, 2003 MT 366, ¶ 18,

5

319 Mont. 90, ¶ 18, 86 P.3d 1027, ¶ 18. Here, determining whether the District Court erred in failing to dismiss Count II can be resolved through application of our code of criminal procedure §§ 46-11-410(2)(a) and 46-1-202(9), MCA.

¶20 Section 46-11-410, MCA, states, in pertinent part, as follows:

(1) When the same transaction may establish the commission of more than one offense, a person charged with the conduct may be prosecuted for each offense.

(2) A defendant may not, however, be convicted of more than one offense if:

(a) one offense is included in the other . . . .

¶21 Section 46-1-202(9), MCA, defines "included offense" as follows:

"Included offense" means an offense that:

(a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . .

¶22 As used in § 46-1-202(9)(a), MCA, the term "facts" refers to the statutory elements of the offense, not the individual facts of the case. *State v. Beavers*, 1999 MT 260, ¶ 30, 296 Mont. 340, ¶ 30, 987 P.2d 371, ¶ 30.

¶23 Here, Russell was charged with felony homicide under § 45-5-102(1)(b), MCA. Felony homicide can be accomplished by multiple means under the statute.

A person commits the offense of deliberate homicide if . . . the person attempts to commit, commits, or is legally accountable for the attempt or commission of robbery, sexual intercourse without consent, arson, burglary, kidnapping, aggravated kidnapping, felonious escape, assault with a weapon, aggravated assault, or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being.

6

Section 45-5-102(1)(b), MCA. The statute lists a myriad of possible predicate felonies: robbery, sexual intercourse without consent, arson, burglary, kidnapping, and so on. The State charged Russell by information with deliberate homicide under § 45-5-102(1)(b), MCA, and identified aggravated assault as the predicate felony. The court defined the felony homicide charge to include aggravated assault in its instructions to the jury. Thus the charge, as applied to Russell, included aggravated assault as an element of felony homicide.

¶24 At oral argument, the State conceded that the same evidence was used to prove the stand-alone aggravated assault charge in Count II, and the predicate felony relied upon in the felony homicide charge in Count I. An offense is an included offense if it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . ." Section 46-1-202(9)(a), MCA. In the unique context of felony homicide, the predicate offense is, of necessity, an included offense, as well as an element of the felony homicide itself. As applied in this case, aggravated assault is both an included offense and an element of felony homicide.

¶25 Under § 46-11-410(1)-(2)(a), MCA, "A defendant may not . . . be convicted of more than one offense" arising out of "the same transaction" if "one offense is included in the other . . . ." Assuming that the assault on Wallin and the killing of Gewanski were

part of the same transaction,[1] then under § 46-11-410(2)(a), MCA, Russell's conviction of felony homicide precludes a conviction on the aggravated assault charge in Count II.

¶26    In his dissent, Justice Rice relies heavily on our 1981 decision in *State v. Close*, 191 Mont. 229, 623 P.2d 940 (1981). The *Close* decision is of very limited value in the present case. The basic premise of the *Close* rationale is false. The *Close* Court engaged in a *Blockburger* analysis and held that "it is clear that proof of felony homicide will not necessarily require proof of either robbery or aggravated kidnapping." *Close*, 191 Mont. at 246, 623 P.2d at 950. One can commit felony homicide without committing robbery, or commit aggravated kidnapping without committing felony homicide. Therefore, *Blockburger* does not require the conclusion that felony homicide and the underlying felony merge." *Close*, 191 Mont. at 247, 623 P.2d at 950. Although the Court was correct that, in the abstract, one can commit felony murder without necessarily committing aggravated kidnapping or can commit aggravating kidnapping without committing felony homicide, a defendant cannot commit the offense of felony homicide without committing a predicate felony offense. Thus when the State uses an offense (such as kidnapping or robbery or, as here, assault) as a predicate offense in its charge of felony homicide, the accused cannot be found guilty of felony homicide without having committed the predicate offense of kidnapping, robbery, or assault. When the State

---

[1] Although Justice Nelson makes an argument that the predicate offense of aggravated assault on Wallin (Count II) was not sufficiently causally related to the killing of Gerwanski to justify the felony homicide charge, that issue was not raised or briefed in this appeal.

8

chooses to charge the offenses in that fashion, the offenses merge. The predicate offense becomes a lesser included offense of the felony homicide charge. Sections 46-11-410, 46-1-202(9), MCA.

¶27 The dissent argues that where there are two victims, the State should be able to hold the defendant separately accountable for each crime. The dissent's criticism is valid but misdirected. The discretion to charge whom with what lies with the State, not this Court. Here, the State could have charged Russell with felony homicide of Gewanski using robbery as the predicate felony, and then charged Russell separately with felony assault of Wallin, in which case there would have been no merger of the assault and the homicide convictions. Alternatively, the State could have avoided merger altogether by charging Russell with all three crimes separately: first, the deliberate homicide of Gewanski under § 45-5-102(a), MCA; second, robbery by accountability under §§ 45-4-401(1)(a) and 45-2-302(3), MCA; and finally, the aggravated assault of Wallin under § 45-5-202, MCA. Contrary to the dissent's characterization, the merger of the homicide and assault convictions in this felony homicide case arises not from a "stupefying leap" by this Court, but from the State's choice in framing the charges.

¶28 Our decision does not, as the dissent suggests, give Russell a "free pass" for Wallin's assault. As we painstakingly outline above, the State had to prove each element of aggravated assault in order to convict Russell for felony homicide in this case. Russell was punished for both the predicate offense, Wallin's assault, and Gewanski's homicide, when he was charged and convicted under § 45-5-102, MCA.

9

¶29 Finally, under § 45-5-102, MCA, felony homicide is punishable by death, by life imprisonment, or by imprisonment for a term of not less than 10 years or more than 100 years. The dissent's hyperbolic "free pass" argument ignores the fact that where the felon is sentenced to death or life in prison for felony homicide, any additional punishment for the underlying felony would have no practical effect.

¶30 Accordingly, we hold that the District Court erred in refusing to dismiss Russell's conviction for aggravated assault under Count II.

¶31 **II. Was the performance of Russell's trial counsel constitutionally deficient?**

¶32 Russell argues that his trial counsel's failure to move to exclude Henry Rideshorse's testimony constituted ineffective assistance of counsel. A claim of ineffective assistance of counsel presents mixed questions of law and fact which we review *de novo*. *State v. Herman*, 2008 MT 187, ¶ 10, 343 Mont. 494, ¶ 10, 188 P.3d 978, ¶ 10.

¶33 To determine whether counsel's performance was constitutionally deficient, we apply the two-prong test adopted by the United States Supreme Court in *Strickland*. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, ¶ 10, 183 P.3d 861, ¶ 10. Before we apply the *Strickland* test, however, we must first determine whether the ineffective assistance of counsel claim is record-based or not. *State v. St. Germain*, 2007 MT 28, ¶ 34, 336 Mont. 17, ¶ 34, 153 P.3d 591, ¶ 34. Claims involving "omissions of trial counsel frequently are ill-suited for direct appeal." *State v. Meyers*, 2007 MT 230, ¶ 10, 339 Mont. 160, ¶ 10, 168 P.3d 645, ¶ 10. While the failure to object to a witness's testimony may be record-

10

based and thus appropriate for resolution on direct appeal, commonly the record does not reflect counsel's reasons for failing to object. *St. Germain*, ¶ 35. We have held that "[i]f the record does not fully explain why counsel failed to object to the admission of evidence, the matter is best suited for postconviction proceedings." *St. Germain*, ¶ 35.

¶34 Here, Russell asserts that his lawyer should have moved to exclude Rideshorse's testimony. He contends that Rideshorse was not competent to be a witness because he was heavily intoxicated the night of the crime, and potentially suffered from a mental disability. Russell's counsel did not move to exclude Rideshorse as a witness. At trial, defense counsel cross-examined Rideshorse about his alcohol use and level of intoxication the night of the crime in an attempt to impeach him, but did not broach the subject of Rideshorse's alleged mental disability.

¶35 In order to prevail on an ineffective assistance of counsel claim, the appellant must show that his counsel's performance "fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. Here, the record does not fully explain the surrounding circumstances, including why defense counsel failed to move to exclude Rideshorse's testimony. Prior to trial, and without the court's permission or knowledge, defense counsel caused the district court clerk to issue a subpoena duces tecum to several hospitals for Rideshorse's medical records. Counsel then moved the court for an *in-camera* review of the records. The court denied the motion, ordered counsel to turn the records over to the court immediately, and prohibited counsel from referencing any information contained within the records at trial. Russell alleges that his counsel's

11

"bungled attempts" to obtain Rideshorse's medical records prejudiced his defense by preventing him from moving to exclude Rideshorse's testimony and from cross-examining Rideshorse as to his alleged disabilities. The record before us does not fully explain why defense counsel took this particular course of action or why counsel failed to object to Rideshorse's testimony. This issue is best suited for review in a post-conviction proceeding which will permit further inquiry into the matter. We dismiss this issue without prejudice.

¶36 **III. Was Russell's constitutional right to a unanimous jury verdict violated?**

¶37 At the close of the trial, Russell offered the following jury instruction, which was refused by the District Court:

> The defendant is charged with the offence [sic] of Deliberate Homicide/Felony murder. The Defendant may be found guilty if the proof shows beyond a reasonable doubt the Defendant committed any one or more of such acts, but in order to find the Defendant guilty, all the jurors must agree that the Defendant committed the same act or acts. The particular act or acts committed so agreed upon be states [sic] in the verdict.

Instead, the District Court delivered a general unanimity instruction:

> The law requires the jury verdict in this case to be unanimous. Thus, all twelve of you must agree in order to reach a verdict whether the verdict be guilty or not guilty.

Russell claims he was entitled to a specific unanimity instruction in this case, and that the District Court erred by refusing to give his proposed instruction.

¶38 We review jury instructions in criminal cases to determine "whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. Swann*, 2007 MT 126, ¶ 32, 337 Mont. 326, ¶ 32, 160 P.3d 511, ¶ 32. A

12

district court has broad discretion when it instructs a jury; our review of a district court's decision regarding jury instructions is confined to determining whether the court abused its discretion. *Swann*, ¶ 32.

¶39 A criminal defendant's right to a unanimous jury verdict is protected by Article II, Section 26 of the Montana Constitution. *State v. Vernes*, 2006 MT 32, ¶ 21, 331 Mont. 129, ¶ 21, 130 P.3d 169, ¶ 21; *State v. Weaver*, 1998 MT 167, ¶ 26, 290 Mont. 58, ¶ 26, 964 P.2d 713, ¶ 26. In *Vernes*, we explained: "Unanimity means more than an agreement that the defendant has violated the statute in question; it requires substantial agreement as to the principal factual elements underlying a specific offense." *Vernes*, ¶ 21.

¶40 Russell argues that like the defendant in *Weaver*, he is entitled to a specific unanimity instruction. In *Weaver*, the defendant was convicted of two counts of sexual assault for acts which spanned a period of five months for one count, and five years for the other count. *Weaver*, ¶¶ 8, 13. We reversed the convictions, and held that the district court should have specifically instructed the jury that it had to reach "a unanimous verdict as to at least one specific underlying act of sexual assault for each count." *Weaver*, ¶ 40. The instructions in *Weaver* were faulty because each count alleged more than one unlawful act, *Weaver*, ¶¶ 17, 38, and so there was a risk that the conviction occurred as a result of "different jurors concluding that the defendant committed different unlawful acts. . . ." *Vernes*, ¶ 23.

¶41 Russell urges us to view the events occurring the evening of April 25, 2005, as consisting of two separate attacks: first, the assault on Wallin, and second, the homicide of Gewanski. Russell implies that the felony homicide charge improperly charges him

13

with two distinct crimes as a continuous course of conduct, and that such a result is prohibited by *Weaver*. The instant case, however, is distinguishable from *Weaver*. While Weaver's sexual attacks spanned the course of several months, Russell's unlawful acts all took place in one night. Rideshorse testified at trial that Russell assaulted Wallin, moved on to Gewanski, and then resumed his attack on Wallin. The assault and the homicide took place in the same back alley, only feet away from each other. Although a count of felony homicide necessarily involves two or more crimes—homicide and the underlying felony—we reject the implication that a felony homicide charge automatically warrants a specific unanimity instruction.

¶42    In the instant case, no specific unanimity instruction was necessary. To convict Russell of the felony homicide of Gewanski, the State had to prove that Russell was guilty of the underlying felony—the aggravated assault of Wallin. The court's instructions clearly established the elements of felony homicide, and clearly identified the aggravated assault of Wallin as the underlying felony.

¶43    The court's instructions with respect to the remaining three counts also identified each element of each respective crime, and were equally clear. We conclude that the instructions given by the District Court fully and fairly instructed the jury on the law applicable to the case. As such, we cannot say that the District Court abused its discretion by refusing Russell's proposed specific unanimity instruction.

## CONCLUSION

¶44    We reverse the District Court's order denying Russell's motion to dismiss his conviction for aggravated assault. Aggravated assault was an included element of felony

14

homicide under § 45-5-102(1)(b), MCA, as charged and applied in this case. Article II, Section 25 of the Montana Constitution prohibits the State from convicting and punishing Russell again for the same aggravated assault. Accordingly, we vacate Russell's conviction for aggravated assault under Count II of the information. We conclude that the District Court did not abuse its discretion in denying Russell's proposed specific unanimity jury instruction. Finally, Russell's ineffective assistance of counsel claim is not record-based, thus we dismiss it without prejudice.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice James C. Nelson, concurring in part and dissenting in part.

¶45　While I generally agree with the Court's resolution of Issues I, II, and III, I cannot join the Court's ultimate disposition of this appeal. In my view, Russell's conviction of felony homicide (Count I) is invalid. Consequently, I would reverse his conviction under Count I, affirm his conviction and sentence under Count II (aggravated assault), and not reach the double jeopardy and unanimity claims addressed by the Court under Issues I and III, respectively.

¶46　It is necessary at the outset to acknowledge the Court's assertion that this issue was not raised or briefed in this appeal. Opinion, ¶ 25 n. 1. This is only partly true.

15

Russell does assert in his argument under Issue III that the assault on Wallin and the killing of Gewanski were "two separate acts," not "a continuous course of conduct." *See* Opinion, ¶ 41. He fails, however, to develop this point. As a result, his argument is deficient under this Court's rules concerning appellate briefs. *See* M. R. App. P. 12(1)f.; *see also State v. Miller*, 2008 MT 106, ¶ 15, 342 Mont. 355, ¶ 15, 181 P.3d 625, ¶ 15 (Conclusory assertions are "a wholly inadequate presentation of an issue to this Court.").

¶47 On the other hand, Russell asserted during oral argument that a felony homicide had not occurred in this case. Furthermore, in response to a follow-up question from the Court, Russell explained: "I think the assaults on Mr. Wallin were completed and that, therefore, the assaults on the second individual who was asleep down the alley in a different place were not 'in the course of' those assaults." Russell emphasized that this would be his position if he were permitted to argue it. (This Court's order classifying the case for oral argument limited the parties' arguments to the double jeopardy issue.)

¶48 But even if Russell committed a procedural misstep in challenging the validity of his felony homicide conviction, this Court has stated that " 'a serious error which appears on the face of [the] record is reviewable, although not presented by the parties' if ignoring the error would cause substantial injustice." *State v. Andersen-Conway*, 2007 MT 281, ¶ 14, 339 Mont. 439, ¶ 14, 171 P.3d 678, ¶ 14 (brackets in *Andersen-Conway*) (quoting *Kudrna v. Comet Corp.*, 175 Mont. 29, 51, 572 P.2d 183, 195 (1977)). We concluded in *Andersen-Conway* that it was necessary to "raise and decide the dispositive issue *sua sponte*," since "incarceration of an individual pursuant to a facially invalid sentence represents a grievous wrong, and a miscarriage of justice that warrants relief

16

even if the defendant is otherwise procedurally barred." *Andersen-Conway*, ¶ 14. The same can be said here: Incarceration of Russell pursuant to a *conviction* that is plainly contrary to the evidence and the law represents a grievous wrong, and a miscarriage of justice that warrants relief even if he is otherwise procedurally barred from raising the point.

¶49 Indeed, review of Russell's claim is compelled by this Court's "overriding obligation to acknowledge and protect the substantial rights of litigants." *State v. Carter*, 2005 MT 87, ¶ 13, 326 Mont. 427, ¶ 13, 114 P.3d 1001, ¶ 13. This obligation mandates that we not turn a blind eye to an invalid conviction simply because appellate counsel mounted an underdeveloped or procedurally bungled challenge thereto. In point of fact, this Court may consider a question which otherwise would be procedurally barred "if it relates to a substantial or fundamental right of a litigant." *Wolfe v. Dept. of Labor and Industry*, 255 Mont. 336, 339, 843 P.2d 338, 340 (1992); *accord Carter*, ¶¶ 13-14; *Cottrill v. Cottrill Sodding Service*, 229 Mont. 40, 42, 744 P.2d 895, 896 (1987); *Eastman v. Atlantic Richfield Co.*, 237 Mont. 332, 337, 777 P.2d 862, 865 (1989); *see also State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996) (discussing this Court's "inherent power and paramount obligation to interpret Montana's Constitution and to protect the various rights set forth in that document"), *overruled in part on other grounds*, *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21. Here, on the record before us, it is plain that Russell's fundamental right to due process is at issue and that it is necessary, therefore, for this Court to consider the legal validity of the felony homicide conviction.

¶50  In prosecuting Russell for felony homicide, the State's theory was that the death of Gewanski occurred "in the course of" the assault on Wallin.  Section 45-5-102(1)(b), MCA.  More specifically, the prosecutor alleged that Russell committed aggravated assault against Wallin and "then in the course of the offense of Aggravated Assault or flight thereafter," he "stabbed, cut or otherwise assaulted [Gewanski], using a knife or other edged weapon, causing his death."  This theory is flawed as a matter of law, as there is no factual or legal basis whatsoever supporting the proposition that the death of Gewanski was causally related to the assault on Wallin.  To the contrary, the evidence suggests, as Russell contends, that these were two entirely distinct events.

¶51  According to the testimony at trial, Spotted Wolf slashed Wallin's face and Russell stabbed Wallin several times in the back.  The two then left Wallin and proceeded east through the alley.  As Spotted Wolf explained in response to questioning by the prosecutor:

> A.  We were pretty much just going to go around to the other side [of the building] and just leave out to the North Side.  I said -- well, you know, we found out it was blocked off right there (indicating).
> Q.  And what happened then?
> A.  We stopped -- well, you know, we stopped by that garbage can or that dumpster thing.
>
> .  .  .
>
> Q.  Okay.  What happened then?
> A.  Well, you know, we just stopped for, you know, not too long, we just stood there and then, you know, [Russell] went over here, and I don't know what he was -- you know, he was doing, he was hitting another person.

18

(The other person was Gewanski.) Thereafter, because their easterly route was blocked, Russell and Spotted Wolf proceeded back to where Wallin was. Upon reencountering him, they both started hitting Wallin again—apparently for no reason other than that "we were just drunk."

¶52 It is long-established in Montana that "for the felony-murder rule to apply a causal connection between the felonious act and the death must be present." *State ex rel. Murphy v. McKinnon*, 171 Mont. 120, 127, 556 P.2d 906, 910 (1976); *accord State v. Lester Kills on Top*, 241 Mont. 378, 387, 787 P.2d 336, 342 (1990). In *Murphy*, we noted "with approval" the following guidelines as to the applicability of the felony-murder rule:

> "For the felony-murder rule to apply, it is necessary that the homicide be a natural and probable consequence of the commission or attempt to commit the felony; that the homicide be so closely connected with such other crime as to be within the res gestae thereof; or the natural or necessary result of the unlawful act; or that it be one of the causes. * * *
> "Something more than a mere coincidence of time and place between the wrongful act and the death is necessary. It must appear that there was such actual legal relation between the killing and the crime committed or attempted that the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it."

*Murphy*, 171 Mont. at 126-27, 556 P.2d at 910 (quoting *Wharton's Criminal Law and Procedure*, vol. 1, § 252, at 543).

¶53 Likewise, in *State v. Weinberger*, 206 Mont. 110, 671 P.2d 567 (1983), we quoted with approval the following statements by the Pennsylvania Supreme Court:

> "The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. 'It is necessary . . . to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony . . . and not merely coincidence.' "

19

*Weinberger*, 206 Mont. at 115, 671 P.2d at 569 (quoting *Commonwealth v. Redline*, 137 A.2d 472, 476 (Pa. 1958)) (ellipses in *Redline*).

¶54    Accordingly, we have said that in order to establish felony homicide, the State must prove that the death was "an outgrowth of the [predicate] felony itself and related to the [predicate felony] by an unbroken chain of causation." *State v. Sunday*, 187 Mont. 292, 307, 609 P.2d 1188, 1197 (1980).  We have also relied on § 45-2-201, MCA, in articulating the "causal relationship" that must be shown in order to prove felony homicide.  *See e.g. Weinberger*, 206 Mont. at 114-15, 671 P.2d at 569; *State v. Turner*, 265 Mont. 337, 348, 877 P.2d 978, 984-85 (1994).  This statute states, in pertinent part: "Conduct is the cause of a result if . . . without the conduct the result would not have occurred."  Section 45-2-201(1)(a), MCA (paragraph break omitted).

¶55    Given the law as stated above, the charge of felony homicide in this case is not supported by the facts established at trial.  As a matter of fact, it is not even supported by the allegations set out under Count I of the Amended Information.  Indeed, there is simply no causal connection at all between the aggravated assault on Wallin and the death of Gewanski.  Russell and Spotted Wolf completed their assault on Wallin.  They then decided "to go around to the other side [of the building] and just leave"; however, their passage through the east end of the alley was blocked.  But rather than turn around and leave through the west end of the alley where they had entered, they "just stopped for, you know, not too long, [they] just stood there."  Obviously, this cannot be construed as "flight" from the assault on Wallin.  Section 45-5-102(1)(b), MCA.  At that point,

20

Russell attacked and killed Gewanski, who had been sleeping next to a dumpster. Thereafter, he and Spotted Wolf walked back to where Wallin was and ended up assaulting him again.

¶56   While these events may constitute "the same transaction" for purposes of § 46-11-410(1), MCA, they do not support the proposition that a causal connection existed between the aggravated assault on Wallin and the death of Gewanski. The death of Gewanski was in no way "a natural and probable consequence" or "the natural or necessary result" of the assault on Wallin. Nor can it be said that "the conduct causing death was done in furtherance of the design to commit the [aggravated assault]" or that the killing "occurred as a part of the perpetration of the [aggravated assault], or in furtherance of an attempt or purpose to commit it."

¶57   "The mere coincidence of [a] homicide and [a forcible] felony is not enough to satisfy the requirements of the felony-murder doctrine." *Weinberger*, 206 Mont. at 115, 671 P.2d at 569 (internal quotation marks omitted). "Something more than a mere coincidence of time and place between the wrongful act and the death is necessary." *Murphy*, 171 Mont. at 127, 556 P.2d at 910 (internal quotation marks omitted). While it may be debated whether the assault on Wallin and the death of Gewanski were more than mere coincidence, there is absolutely no basis for concluding that they were causally related or connected.

¶58   For the foregoing reasons, I conclude that the prosecutor improperly charged felony homicide in this case and that Russell's conviction is invalid as a matter of law. In reaching this conclusion, it is necessary to acknowledge that "when the facts of a case

21

support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." *State ex rel. Fletcher v. District Court*, 260 Mont. 410, 415, 859 P.2d 992, 995 (1993). At the same time, however, whether an offense is properly charged, given the facts, and whether a conviction is legally sustainable, given the evidence, are legal questions which this Court must decide. *See e.g. State v. McWilliams*, 2008 MT 59, ¶¶ 19-39, 341 Mont. 517, ¶¶ 19-39, 178 P.3d 121, ¶¶ 19-39. Here, the facts as alleged by the prosecutor and established at trial cannot, as a matter of law, support the charge of felony homicide.

¶59 Had this case been properly charged—deliberate homicide under § 45-5-102(1)(a), MCA, for the death of Gewanski and aggravated assault under § 45-5-202(1), MCA, for the serious bodily injury inflicted on Wallin—then the State would have two convictions for two separate acts. As it is, however, under the Court's resolution of Issue I, the State has only one conviction for the two acts.

¶60 In sum, §§ 46-11-410(2)(a) and 46-1-202(9)(a), MCA, would preclude Russell's conviction on the aggravated assault charge if he were lawfully convicted on the felony homicide charge. Opinion, ¶¶ 20-25. But because the felony homicide charge is not supported by the facts as alleged by the prosecutor and proved at trial, I conclude that the aggravated assault charge can stand. Thus, I would reverse Russell's conviction under Count I and affirm his conviction and sentence under Count II.

¶61 I concur and dissent.

/S/ JAMES C. NELSON

Justice Jim Rice, dissenting.

¶62 The Court's decision may well come as a surprise to both Russell and the State. Throughout this case, the parties have litigated the issue raised—whether the double jeopardy clause of the Montana Constitution barred conviction and sentencing for both felony murder and the underlying felony. However, the Court lays aside the subject matter of this litigation and decides the case based upon a premise which has never been mentioned during the course of this case. There was no reference whatsoever of § 46-11-401, MCA, in the District Court or in the appellate briefs filed with this Court, and neither party discussed it during the oral argument we conducted on the University of Montana campus. However, upon retreat to the ivory tower, the Court has recast the case. The many people who have observed our proceedings and watched this case can now say, "Oh, *that's* how it works!"

¶63 The Court offers the justification that we "avoid constitutional issues whenever possible." However, this principle of judicial self-restraint does not permit us to avoid constitutional issues by deciding cases on issues *not raised*. We are not to forage about for issues not argued in order to avert consideration of a constitutional claim the parties have validly raised within the proceeding. Thus, it is not "possible" to avoid the constitutional issue raised in this case. The Court rejects consideration of an issue addressed by Justice Nelson's Concurrence and Dissent because "that issue was not raised or briefed in this appeal." The old expression about the pot calling the kettle black comes to mind.

23

¶64 The Court's approach is fundamentally unfair to any litigant, here the State, who has defended a case upon the issues raised, prevailed in the District Court, then argued the case again on appeal upon the issues raised, only to lose the case on an issue neither party has ever mentioned during the course of the litigation—and on which it had no opportunity to brief, argue, or defend.

¶65 Before turning to the issue raised, briefed, and argued, I am compelled to briefly point out the errors in the Court's analysis. Perhaps as a consequence of addressing an issue which has not been researched and briefed by the parties, the Court, in my opinion, misapplies the statutes and overturns important precedent. The Court attempts to jam § 45-5-102, MCA, the felony murder statute, into § 46-1-202(9), MCA, the general definition of lesser included offense, in order to conclude that Russell cannot be convicted for both knifing Wallin and killing Gewanski under § 46-11-410, MCA, because these crimes are necessarily included within the other. It is clear that the Legislature did not intend such a result—indeed, we have so held. These crimes met the criteria for fulfillment of the special purposes of the felony murder statute without losing their distinctness as separate crimes.

¶66 Section 45-5-102(1), MCA, provides as follows:

> A person commits the offense of deliberate homicide if: (a) the person purposely or knowingly *causes the death of another human being*; or (b) the person attempts to commit, commits, or is legally accountable for the attempt or commission of robbery, sexual intercourse without consent, arson, burglary, kidnapping, aggravated kidnapping, felonious escape, assault with a weapon, aggravated assault, or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime *causes the death of another human being*.

(Emphasis added.) Both subparagraphs make it a crime to deliberately cause the death of another person. The only difference between deliberate homicide under (a) and homicide by felony murder rule under (b) is the proof of mental state. As we discussed in *Close*, we have long recognized, from the days when criminal liability was predominantly governed by the common law, the principle of felony murder whereby malice, required by first degree murder, is "implied" from commission of the underlying felony. 191 Mont. at 248, 623 P.2d at 950. We noted in *Close* that this "history of the common law and the purpose behind laws are both important tools to be used to determine legislative intent." 191 Mont. at 247, 623 P.2d at 950. We thus traced the history and purpose of felony murder statutes and gave the reason why felony murder involves two distinct crimes:

> Given this rationale for the felony murder doctrine, it strains credulity to hold that the underlying felony merges into the felony murder. The statute proscribing the underlying felony—robbery, for example—is designed to protect a wholly different societal interest from the felony murder statute, which is intended to protect against homicide. The underlying felony is an essential element of felony murder only because without it the homicide might be second degree murder or manslaughter. Clearly, neither manslaughter nor second degree murder merges with any other felony like robbery or assisting a prisoner to escape.

*Close*, 191 Mont. at 248, 623 P.2d at 950 (citing *U.S. v. Greene*, 489 F.2d 1145, 1168-69, (D.C. Cir. 1973)). We concluded that "[c]learly, the legislature properly allowed and broadened the law relating to *cumulative sentencing* in felony murder cases." *Close*, 191 Mont. at 249, 623 P.2d at 950-51 (emphasis added). We held that the felony murder statute thus contemplates multiple sentences, one for the murder and one for the

25

underlying felony. Then in *Burkhart*, we used the same legislative intent analysis and reaffirmed our holding in *Close*, that the predicate offense and the felony murder do not merge, even though the offenses at issue in *Burkhart* involved the same victim and one charge.

¶67 However, in a stupefying leap unsupported by any authority, and without so much as a thought about whether the statutes might be deemed to conflict and thus require reconciliation, the Court concludes that the Legislature has somehow eliminated multiple punishments in felony murder cases—despite the careful explanation to the contrary in *Close* and despite hundreds of years of common law to the contrary—by virtue of the enactment of the statutes generally addressing lesser included offenses and multiple prosecutions. I cannot agree. Without saying so, the Court repudiates our holding in *Close* that the "statute proscribing the underlying felony . . . is designed to protect a wholly different societal interest from the felony murder statute, which is intended to protect against homicide," and that a merger of the two offenses would ignore the Legislature's manifest intention to serve these two different interests. *Close*, 191 Mont. at 248, 623 P.2d at 950-51 (citing *Greene*, 489 F.2d at 1168-69).

¶68 In my view, and as we have held, the felony murder rule is a specific statute applying to the homicide case involving a predicate felony, and fulfills special societal interests. This legislative intent has not been rejected by the enactment of §§ 46-1-202(9) and 46-11-410, MCA. The Court's decision not only rejects legislative intent and our precedent, it defies any common sense—that Russell could stab one victim and kill

26

another but be limited to only one sentence. I could not be more confident that the Legislature did not intend this result.

¶69 In response to this dissent, the Court fesses up. It admits that we held to the contrary in *Close*, but then takes drastic action—overruling *Close*—necessary to support its holding here, concluding that "[t]he basic premise of the *Close* rationale is false." Thus, the Court removes the "stupefying leap" from its opinion by overruling precedent to fill the gap. What remains stupefying is that the Court would overrule longstanding precedent without the issue being raised, briefed, or argued.

¶70 Reasoning that because "a defendant cannot commit the offense of felony homicide without committing a predicate felony offense," the Court holds, obliquely, that the predicate offense must *always* merge with the homicide and under no circumstances can a defendant be punished for both crimes. It blames the prosecutor for this predicament, and suggests that Russell should have been charged with aggravated assault as a stand-alone charge, and robbery should have been used as the predicate offense. Of course, under the Court's approach, Russell could never be punished for the robbery, but more to the point, the prosecution should not be faced with this choice.

¶71 We have explained all of this before, which the Court simply ignores. "The test for determining what constitutes the same offense *differs* depending on whether the case involves multiple prosecutions or multiple punishments imposed at a single prosecution . . . . Two statutory crimes that constitute 'the same offense' for purposes of multiple prosecutions do not necessarily constitute 'the same offense' for purposes of multiple punishments." *Close*, 191 Mont. at 245, 623 P.2d at 949 (emphasis added).

¶72 Close was charged with deliberate homicide, aggravated kidnapping, and robbery in a single prosecution. "The issue, then, is not one of multiple prosecutions but of multiple punishments. The issue is whether, under Montana's statutory scheme, a defendant may be punished for both felony homicide and the underlying felony." *Close*, 191 Mont. at 245-46, 623 P.2d at 949. In determining that multiple punishments were indeed permissible, the Court determined that felony murder was a unique creation—it operated uniquely to avoid merger, serving "a wholly different societal interest." Today, the Court simply discards the unique interest served by the felony murder rule in favor of theoretical consistency: it demands that felony murder be subjected to general merger rules, necessarily holding that felony murder is no longer a unique mechanism under our law with regard to multiple punishments. The Court offers no explanation for why the unique societal purposes, which we have explained are served by the felony murder statute, must be discarded in favor of generally applicable merger provisions. It offers nothing which would indicate that such general provisions were intended to obstruct the operation of the felony murder statute, which is grounded in hundreds of years of common law. The loser is justice: "If a defendant wants to commit a felony, he must pay a price. If a defendant wants to commit murder in addition to the felony or in the course of committing another felony, he must pay a higher price." *Close*, 191 Mont. at 249, 623 P.2d at 950.

¶73 Turning likewise briefly to the issue actually raised, the constitutional prohibition on double jeopardy, Russell argues that we, without saying so, overruled *Close* and rejected consideration of legislative intent, and likewise endorsed expansive double

28

jeopardy principles which require reversal, in *State v. Guillaume*, 1999 MT 29, 293 Mont. 224, 975 P.2d 312. However, this argument ignores that *Close* addressed the precise double jeopardy question before us here—whether a defendant can be convicted and punished for both felony murder and the underlying felony—while the concern addressed by the deeply divided Court in *Guillaume* was a sentencing enhancement statute. We should be careful about quickly discarding *Close*.

¶74 While I would agree that legislative intent does not constrain the protections of the Constitution, that does not mean that legislative intent is completely irrelevant when applying constitutional protections. Rather, we should look at the purposes the Legislature intended and then determine whether those purposes are permissible under and consistent with constitutional protections. This was the approach we took in *Burkhart*, decided after *Guillaume*, and is the appropriate approach here. *See Burkhart*, ¶¶ 42-45. In *Burkhart*, we considered whether due process was violated by the felony murder statute when the underlying felony is integral to the homicide, and concluded that it was not. *Burkhart*, ¶ 38. We further concluded, on the basis of legislative intent, that the felony murder rule did not violate due process by relieving the State from proving intent to kill in that case. *Burkhart*, ¶ 45.

¶75 It is important to note that, unlike the charges here, Burkhart was not charged separately with the underlying felony of aggravated assault, and we did not consider whether separate charging or separate punishment was permissible pursuant to the double jeopardy clause. Additionally, Burkhart was charged with felony murder on the basis of assault and homicide of the same victim. We did not consider in *Burkhart* the factual

29

premise presented today where the victim of the predicate felony is different than the victim of the felony murder.

¶76 That is a critical point. Irrespective of whether we consider legislative intent and the unique nature of the felony murder statute, to hold that the State violated Russell's right against double jeopardy would produce a result disconnected from the facts of this case. Simply put, Russell committed two crimes—he killed Gewanski and assaulted Wallin with a weapon. Russell was then charged with and convicted of two crimes— felony murder of Gewanski and aggravated assault of Wallin. If we accept Russell's argument that Russell cannot be punished for both, the outcome is clear: Russell would receive a free pass for assault with a knife upon Wallin. "Double jeopardy exemplifies the legal and moral concept that no person should suffer twice for a single act." *Guillaume*, ¶ 17. However, Russell committed two acts and would suffer only once. Such a result is antithetical to the legal and moral concepts behind double jeopardy.

¶77 Other jurisdictions have noted this precise distinction—multiple victims. The Supreme Court of Georgia distinguished between felony murder involving a single victim and felony murder involving multiple victims in *Walker v. State*, 327 S.E.2d 475, 479 (Ga. 1985). Where "the underlying felony charged in one count of the indictment is committed upon one victim and the . . . felony murder charged in another count of the indictment is committed upon another person . . . the underlying felony does not merge with the felony murder conviction." *Satterfield v. State*, 285 S.E.2d 3, 5 (Ga. 1981). The State of Washington has concluded that where the predicate offense is perpetrated against one victim and the felony murder against another, the predicate felony does not merge

30

with the felony murder and punishment for both does not violate double jeopardy—even where the predicate offense, as here, is aggravated assault. *State v. McJimpson*, 901 P.2d 354, 356-57 (Wash. App. 1995). This is because offenses involving different victims but arising from the same act or transaction are not the same in law and fact. *McJimpson*, 901 P.2d at 356. Dual victims demand dual punishments and such punishments do not violate double jeopardy.

¶78 On this clear authority, I would affirm.

/S/ JIM RICE

Chief Justice Karla M. Gray joins the dissent of Justice Rice.

/S/ KARLA M. GRAY